# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW ZELEDJIESKI, | No. 4:16-CV-02257 |
| Petitioner, | (Judge Brann) |
| v. | (Magistrate Judge Carlson) |
| ROBERT GILMORE and THE PENNSYLVANIA ATTORNEY GENERAL, | |
| Respondents. | |

## ORDER

**MARCH 15, 2019**

On November 8, 2016, Matthew Zeledjieski filed a petition pursuant to 28 U.S.C. § 2254, which sought a writ of habeas corpus on eight distinct grounds. On October 24, 2018, Magistrate Judge Martin C. Carlson recommended that this Court deny the petition.[1] On February 4, 2019, Mr. Zeledjieski filed objections to Magistrate Judge Carlson's Report and Recommendation.[2]

Mr. Zeledjieski's objections refer only to five of the eight asserted grounds for relief; this Order, therefore, will address only those grounds. Further, although the parties disagree about the standard of review that should be given to Mr.

---

[1] ECF No. 26.

[2] ECF No. 32.

Zeledjieski's claims,[3] this Court need not resolve that issue because the proposed grounds for relief, even when considered de novo, are all without merit.

Magistrate Judge Carlson provided an accurate and thorough summary of the background of this case in his Report and Recommendation.[4] This Court finds no need to replicate his work again here, and will proceed immediately to consideration of Mr. Zeledjieski's legal arguments.

## Skinhead References

Petitioner argues that his trial counsel was ineffective for failing to object when references were made to his membership in the Skinheads. This argument proceeds in three steps.

First, Mr. Zeledjieski argues that trial counsel should have objected to the use of Mr. Zeledjieski's skinhead membership to show that he had a motive for committing the crime.[5] As a legal matter, however, it is far from a foregone conclusion that such an objection would have been successful.[6] And as a factual

---

[3] *See* Report and Recommendation 9-32.

[4] *Id.* 2-9.

[5] Petition ¶¶ 44-45.

[6] *See* Pa.R.E. 404(b) (allowing the use of crimes, wrongs, and other acts in order to show motive); *O'Neal v. Delo*, 44 F.3d 655, 661 (8th Cir. 1995) (allowing use of defendant's Aryan Brotherhood membership to show motive).

Mr. Zeledjieski argues that the trial court actually *did* exclude motive evidence, and that trial counsel was constitutionally ineffective for failing to enforce that ruling through appropriate objections. The trial judge, however, made no such ruling. Instead, she merely stated at sidebar during voir dire that it was her "understanding" that the prosecutor was not going to use skinhead membership to show motive. Trial Transcript (ECF No. 14-12) 33.

matter, the prosecutor explicitly renounced reliance on a motive,[7] and the only passing reference[8] to such a motive in testimony would have been, in this Court's view, too slight to influence the jury's verdict.[9]

Second, Mr. Zeledjieski argues that trial counsel should have objected when the prosecutor argued that the testimony of Mr. Lynch and Mr. Mastrobuoni was credible since they were testifying against a fellow skinhead in violation of their loyalty code.[10] It is not a foregone conclusion, however, that such an objection would have been successful.[11]

---

[7] *See* Trial Transcript 488-89 (prosecutor's closing statement) ("This is not a case about skinheads. We're not talking about this as a motive but certainly they were a factor. They lived at a skinhead flophouse in Allentown. That's where some of the conversation took place. We're not talking about this as a motive; that it was a skinhead killing. But think about it. We don't know what the motive was. We don't have to prove motive. We have no clue what the motive would be in this case. It's just a senseless brutal act committed, we submit, by Matthew Zeledjieski.").

[8] *Compare* Trial Transcript 126 (testimony that Mr. Zeledjieski said, regarding the victim, that "[t]he homeless bastard deserved it anyway"); *with* Trial Transcript 441-442 (testimony that skinheads hold animosity towards homeless people).

[9] It is true that such motive evidence could have been "sanitized"—*i.e.*, that the prosecutor could have simply shown that Mr. Zeledjieski was a member of an unnamed social club with animosity towards homeless people. In light of the extensive voir dire performed on the issue of skinhead-related prejudice, *see* January 9, 2014 Opinion of the Court of Common Pleas of Monroe County 31-32, and in light of the fact that any skinhead-related prejudice felt towards Mr. Zeledjieski would also be felt towards Mr. Lynch (the Commonwealth's most important witness, and the individual whom Mr. Zeledjieski was seeking to blame for the murder) this Court can only conclude that the benefit of such a sanitization would have been virtually nonexistent.

[10] Petition ¶¶ 46-48.

[11] *Commonwealth v. Whitfield*, 275 Pa. Super. 530, 534 (Pa. Super. Ct. 1980) (upholding the use of witnesses' membership in the "Goon Squad" with defendant to bolster the credibility of those witnesses).

And again, even if such credibility evidence could be sanitized, any prejudice felt towards Mr. Zeledjieski would also be felt towards Mr. Lynch. *See supra* note 9.

Third, Mr. Zeledjieski argues that trial counsel should have objected when the prosecutor argued that Mr. Zeledjieski's skinhead membership suggested that he was violent.[12] The prosecutor, however, made no such argument, and this Court doubts that any jury would draw the same tenuous inference from the referenced portions of the prosecutor's comments[13] as Mr. Zeledjieski does in his petition.

In sum, then, Mr. Zeledjieski has not shown a reasonable probability that any of the proposed objections, if made, would have altered the result of his criminal trial.[14]

Vouching

Mr. Zeledjieski argues that trial counsel was ineffective for failing to object to what he refers to as "pervasive vouching" during the trial. The alleged "vouching" in question consists of:

(1) A portion of the video of the police interview with Mr. Lynch where a police officer stated that he "believe[d]" Mr. Lynch, and where the police "recit[ed] facts of the crime which they had learned from 'more than one source,' and stat[ed] that they already knew the answers to their questions."[15]

---

[12] Petition ¶¶ 49-51.

[13] During trial, the prosecutor stated that this was a "trial of troubled youth," Trial Transcript at 80, 488, and that Mr. Lynch "hangs out with a violent group of people . . . [at] a Skinhead flophouse," Trial Transcript 490. In the first place, the "troubled youth" comment referred to two of the Commonwealth's witnesses and was made to warn the jury about the unsavory character of those witnesses. In the second place, Mr. Zeledjieski did not live at the so-called flophouse.

[14] *Strickland v. Washington*, 466 U.S. 668, 694 (1983) (to prevail on an ineffective assistance of counsel claim, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

[15] *Id.* ¶ 55.

(2) A portion of the video of the police interview with Mr. Zeledjieski where a police officer became angry and abruptly terminated the interview after Mr. Zeledjieski denied knowing about the stabbing.[16]

(3) Testimony of one of the police officers stating that he "believed" Mr. Lynch and "found him to be an honest individual."[17]

(4) A portion of the prosecutor's closing argument where he stated that, "based on the evidence in this case, . . . which is corroborated by what Mr. Lynch had to say, it appears as though [Mr. Lynch] is telling the truth."[18]

Regarding (1) and (2), it seems unlikely that any jury would interpret throwaway remarks or displays of anger during a custodial interrogation as vouching for the interrogee's credibility in any way.[19] As to (3), the statement is merely the police officer's explanation of why he took a particular course with the investigation.[20] And (4) is simply an argument that the jury should believe Mr. Lynch based on the evidence presented.[21] Again, Mr. Zeledjieski has failed to show a reasonable probability that the proposed objections would have altered the result of the trial.

---

[16] *Id.* ¶ 56.

[17] *Id.* ¶ 58.

[18] *Id.* ¶ 59.

[19] And this Court does not agree that "reciting facts of the crime which they had learned from 'more than one source,' and stating that they already knew the answers to their questions" constitutes any form of vouching at all.

[20] *See Commonwealth v. Smith*, 606 Pa. 127, 151-52 (2010) (no improper vouching where witness was just explaining why he took a certain course of action).

[21] *See United States v. Walker*, 155 F.3d 180, 188 (3d Cir. 1998) (noting that the phrase "I submit to you" does not "meet the vouching standard because it does not *assure* the jury that the witness is credible, but instead *asks* the jury to find that the witness was credible," which is "proper argument").

"Polluted Source" Instruction

Mr. Zeledjieski argues that trial counsel was ineffective for failing to request a "polluted source" instruction[22] for Mr. Lynch's testimony.[23] However, in light of the examination[24] of Mr. Lynch on the issue of his possible bias, as well as the argument by trial counsel[25] *and* the prosecutor[26] on that topic, this Court can only conclude that Mr. Zeledjieski has failed to show a reasonable probability that the proposed instructions would have altered the result of the trial.[27]

Investigation of Allentown Murder

Mr. Zeledjieski argues that trial counsel ineffectively investigated the Allentown stabbing which caused him to commit several damaging missteps during trial.

First, Mr. Zeledjieski argues that trial counsel elicited (and failed to object to) hearsay testimony from a police officer that testing on the Allentown knife was "nonconlusive."[28] This Court not only disagrees with Mr. Zeledjieski's characterization of this testimony as an admission that the Allentown knife was

---

[22] Pa. SSJI (Crim) § 4.01.

[23] Petition ¶¶ 62-66.

[24] Trial Transcript 216-19.

[25] *Id.* 460.

[26] *Id.* 487.

[27] *See Soto v. Cameron*, 2015 WL 7965105, at *11 (E.D. Pa. 2015) (refusing to grant habeas relief despite lack of a "polluted source" instruction because, in part, the witnesses in question were examined on the issue of bias).

[28] Petition ¶ 72.

"definitely not the knife used in the instant case"[29] but also disagrees that its admission had any effect on the verdict. In fact, the "nonconclusive" nature of the testing allowed trial counsel to continue to argue that Mr. Lynch was the perpetrator of both crimes.

Second, Mr. Zeledjieski argues that trial counsel failed to object when an Allentown police officer testified that the Allentown victim identified someone other than Mr. Lynch as the perpetrator of that crime.[30] In Mr. Zeledjieski's view, admission of this evidence harmed trial counsel's plan to place the blame on Mr. Lynch for the instant stabbing by suggesting that he also perpetrated the Allentown stabbing. Mr. Zeledjieski, however, ignores other testimony from that police officer that the victim also stated that "there were two individuals" present at the Allentown stabbing and that "[b]oth of them were attacking him."[31] Mr. Zeledjieski also, in essence, asks this Court to find that he was prejudiced by his inability to use forbidden character evidence to his benefit—which it will not do.

---

[29] Petition ¶ 72 n.22.

[30] Petition ¶¶ 73-74.

[31] Trial Transcript 445.

Alibi Witnesses

Mr. Zeledjieski argues that trial counsel ineffectively failed to call his mother and grandmother as alibi witnesses, asserting that "[b]oth would have testified that Petitioner was home during the stabbing."[32]

The grandmother's testimony was that Mr. Zeledjieski was home the night *before* the night of the murder,[33] which the mother sought to explain away by surmising that the grandmother had an extra bingo game that week.[34] The mother's testimony was that Mr. Zeledjieski *had* gone out with Mr. Lynch that evening but that she remembered him returning home at exactly 11:51pm,[35] despite not knowing about the murder until two weeks later.[36]

Due to the grandmother's confusion about the date, the questionable explanation for that confusion, the mother's dubious memory claim, and the fact that the mother's testimony independently put Mr. Zeledjieski with Mr. Lynch on the night of the murder, this Court can only conclude that it was not ineffective for trial counsel to reject this proposed alibi testimony, especially in light of Mr. Zeledjieski's own admission that his supposed alibi witnesses had the wrong night[37]

---

[32] Petition ¶ 77.

[33] Nancy Zeledjieski's Statement Under Oath (ECF No. 14-16) 6.

[34] Wanda Zeledjieski's Statement Under Oath (ECF No. 14-15) 17.

[35] *Id.* 14.

[36] Transcript of May 28, 2013 PCRA Proceedings (ECF No. 14-13) 198.

[37] *Id.* 23.

and in light of trial counsel's apparent strategy to pin the blame on Mr. Lynch while not denying that Mr. Zeledjieski was at the scene of the crime.[38]

Perhaps recognizing the weakness in the family members' testimony as it existed, Mr. Zeledjieski argues that trial counsel was ineffective for failing to investigate further to perhaps reconcile its discrepancies.[39] This argument, however, ignores, trial counsel's belief that the witnesses themselves were not credible.[40] Trial counsel's strategy vis-à-vis the alibi witnesses did not "f[a]ll below an objective standard of reasonableness."[41]

## Conclusion and Disposition

As explained above, trial counsel did not ineffectively handle the alibi witnesses, and any prejudice from the other alleged missteps—by itself or in toto—did not prejudice Mr. Zeledjieski to a degree that requires granting the requested habeas relief. Therefore, **IT IS HEREBY ORDERED** that:

1. The Report and Recommendation of Magistrate Judge Martin C. Carlson, ECF No. 26, is **ADOPTED IN ITS ENTIRETY**.

---

[38] Indeed, the mother's testimony—that Mr. Zeledjieski went out with Mr. Lynch but returned home around midnight—would ask the jury to believe that Mr. Lynch drove Mr. Zeledjieski an hour home from East Stroudsburg and then drove right back to commit the murder.

[39] Petition ¶¶ 79-80.

[40] Transcript of May 28, 2013 PCRA Proceedings 187. *See Parks v. Grace*, 2006 WL 4670907, at *6 (E.D. Pa. Nov. 27, 2006).

[41] *Strickland*, 466 U.S. at 688.

2. Mr. Zeledjieski's Petition for a Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

3. The Clerk of Court is directed to close this case.

4. Because reasonable jurists could disagree with any of this Court's conclusions,[42] a certificate of appealability **SHALL ISSUE** on all the ineffective assistance of counsel claims presented in Mr. Zeledjieski's Petition.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[42] *See Szuchon v. Lehman*, 273 F.3d 299, 312 (3d Cir. 2001).